On petition to review ballot title filed October 29, considered and under advisement on December 5, 2007, ballot title referred to Attorney General for modification February 28, dismissed as moot March 21, 2008 (344 Or 392)

David ROGERS,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S055425)

179 P3d 627

Margaret S. Olney, of Smith, Diamond & Olney, Portland, submitted the brief for petitioner.

Paul L. Smith, Assistant Attorney-in-Charge, Salem, submitted the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

Balmer, J., filed a dissenting opinion, in which Kistler and Linder, JJ., joined.

## DURHAM, J.

Petitioner challenges the ballot title for Initiative Petition 133 (2008). ORS 250.085(5) (describing procedure for challenging Attorney General's certified ballot title). We agree with parts of petitioner's challenge and, therefore, refer the ballot title to the Attorney General for modification.

Initiative Petition 133 (2008), if adopted, would require the Attorney General to assist counties and cities in the "establish[ing] and strengthening of Meth Strike Forces" at city, county, or regional levels, and to assign lawyers from the Department of Justice to assist the strike forces in promoting the prosecution of drug-related crimes in Oregon. The proposed measure would prohibit registered sex offenders from holding elective office. The proposed measure would establish a Commission on Domestic Violence, Child Abuse, and Sex Crimes, including two coordinated task forces, to study and make recommendations on those topics to the Governor and the Legislative Assembly. The proposed measure would create a tax credit for certain taxpayer contributions to "Meth Strike Forces," as mentioned in the measure, or to drug prevention or treatment programs. The proposed measure would require the Legislative Assembly to provide the resources necessary to staff the Oregon State Police at designated minimum staffing levels. Finally, the proposed measure would create a program permitting retired police officers to provide volunteer public safety services in exchange for health insurance.

The Attorney General certified the following ballot title for the proposed measure:

"MODIFIES LAWS RELATING TO LAW ENFORCE-
MENT, CRIMINAL SANCTIONS, PROSECUTIONS,
CONTROLLED SUBSTANCES INVESTIGATIONS;
CREATES TAX CREDIT

"RESULT OF 'YES' VOTE: 'Yes' vote modifies laws relating to law enforcement, criminal sanctions, prosecutions, and controlled substances investigations; creates police staffing requirements, tax credit (thereby reducing tax revenues).

"RESULT OF 'NO' VOTE: 'No' vote retains, without modification, current laws relating to law enforcement, criminal sanctions, prosecutions, controlled substances investigations, Oregon State Police staffing requirement, and tax credits.

"SUMMARY: Currently, Oregon laws address law enforcement, criminal sanctions, prosecutions, and tax credits. Measure prohibits registered sex offenders from elective office. Requires Attorney General to assist counties' controlled substances criminal investigations and prosecutions and to provide at least ten attorneys to this effort; creates tax credit for contributions to drug investigation, prosecution, and treatment programs (thereby reducing state revenues). Establishes Commission on Domestic Violence, Child Abuse, and Sex Crimes to make recommendations to the legislature. Measure requires legislature to incrementally ensure specified minimum Oregon State Police staffing level of one officer per 5,000 residents by May 1, 2013. Establishes program to allow retired peace officers to volunteer at public agencies in exchange for health insurance. Makes Department of Corrections officers equivalent to peace officers. Other provisions."

Petitioner challenges the caption, the "yes" vote result statement, and the summary in the Attorney General's ballot title. A "caption" is a statement of "not more than 15 words that reasonably identifies the subject matter of the state measure." ORS 250.035(2)(a). To determine the subject matter of a proposed measure, we first consider the text and context of the measure. *Earls v. Myers*, 330 Or 171, 175-76, 999 P2d 1134 (2000). We then examine "the changes, if any, that the proposed measure would enact in the context of existing law." *Kain / Waller v. Myers*, 337 Or 36, 41, 93 P3d 62 (2004). Finally, we "examine the words of the caption to determine whether they reasonably identify the proposed measure's subject matter." *Id.*

"We make that inquiry, in part, to insure that the ballot title does not misstate, even by implication, the law that the proposal would enact, and 'thereby create a spurious argument to support the measure's passage.' *Dale v. Kulongoski*, 321 Or 108, 113, 894 P2d 462 (1995)."

*Novick / Bosak v. Myers*, 333 Or 18, 24, 36 P3d 464 (2001). The caption must not understate or overstate the scope of the

legal changes that the proposed measure would enact. *Kain / Waller*, 337 Or at 40.

Petitioner contends that the caption is not adequate, because it does not alert voters to the proposal's creation of a commission and task forces or their true functions. Instead, the caption states that the proposal "modifies laws relating to law enforcement, criminal sanctions, prosecutions, [and] controlled substances investigations * * *." According to petitioner, that phrasing inaccurately tells voters that the proposed measure itself will alter substantive Oregon laws in those areas, when, by contrast, the commission and the task forces mentioned in the proposal will only study and recommend possible substantive legislative changes in the future.

The Attorney General acknowledges that the proposed measure would establish the commission and task forces, as described above, to recommend legislation regarding domestic violence, child abuse, and sex crimes. The Attorney General contends that the caption is accurate because "the creation of the commission would constitute a modification in Oregon law regarding either 'criminal sanctions' or 'law enforcement'—both of which are included in the caption."

■ This court has held that, because the ballot title caption is the "cornerstone" of the ballot title, it must identify the proposed measure's subject matter in terms that will "inform potential petition signers and voters of the sweep of the measure."[1] *Terhune v. Myers*, 342 Or 475, 479, 154 P3d 1284 (2007). To carry out its function, a caption must state "the actual major effect of the proposed measure[,]" if possible, within the applicable word limit provided in ORS 250.035(2)(a). *Id.* at 480.

In the present case, the Attorney General's caption uses what he admits is "broad phraseology" to tell voters that the proposed measure "modifies laws relating to" several legal topics. The problem that we identify with that approach

---

[1] The information function of the caption and result statements, ORS 250.035(2)(a)-(c), takes on particular importance in light of ORS 254.175(2), which, since 1995, has authorized county clerks to print ballots displaying the caption and result statements, but not the summary, of the certified ballot title for an initiated or referred state measure. Or Laws 1995, ch 534, § 1a.

does not concern its literal accuracy. The sweep of the phrase "modifies laws relating to" a stated legal topic is broad enough to refer, at least in a semantic sense, to virtually every amendment of any kind concerning that legal topic.

The problem, instead, is that the caption's phraseology is so broad that it fails to disclose the subject matter of the proposed measure in terms that give notice to the voters of the principal substantive choice or choices that the measure presents. A principal change that the proposed measure would enact in the context of existing law, *i.e.*, creation of a commission, including task forces, to recommend legislation in several areas of the criminal law, can be described to voters accurately within the applicable word limit. The particular wording selected by the Attorney General does not reasonably identify that change.

This court faced a similar problem in *Terhune*. In that case, this court applied the mode of analysis identified in our cases and determined that the Attorney General's reference in the ballot title caption to a "tax credit for educational purposes" was insufficient to disclose the significant change that the proposed measure would enact:

> "In the present case, petitioners argue—and we agree—that the principal effect of the proposed measure (among other important effects) will be to allow tax credits for parochial and other private school tuition. * * * Such a public policy choice—whatever its merits—would represent a very significant change in Oregon law, both by reducing the general fund by the collective total of the tax credits and by facilitating parents' desire to enroll their children, with the aid of public tax dollars, in parochial and other private schools. Those facts make the subject matter of the measure not merely a 'tax credit.' It is, instead, a tax credit aimed most specifically at lessening the tuition burden of those who choose to send their children to parochial or other private schools.

> "The Attorney General's caption blandly refers to a 'tax credit for educational expenses.' That may be accurate, but it hardly can be said to note, much less highlight, the actual major effect of the proposed measure. The caption must

reflect specifically the proposed tuition offset aspect, as dis-
cussed above, if that is possible within the 15-word limit
provided in ORS 250.035(2)(a)."

*Id.* at 479-80. The court referred the ballot title to the Attor-
ney General for modification.

The Attorney General argues that he chose the
broad phrasing in the caption to "encompass[ ] all aspects of
the proposed measure," and that using greater specificity
would have forced him "not to address other aspects of the
subject matter of the proposed measure."

The difficulty with that argument is twofold. First,
the list of topics in the caption to which it refers ("law enforce-
ment, criminal sanctions, prosecutions, controlled sub-
stances investigations") fails to disclose any actual major
effect or other subject matter of the proposed measure. Those
terms all follow the phrase "modifies laws relating to" and,
consequently, appear in the caption as free-floating subjects
of legal amendment, the nature of which is not described. It is
not correct that the Attorney General had to omit the subject
matter of the proposed measure that we have identified
above in order to disclose or describe other aspects of the
measure's subject matter.

Second, the nonspecific nature of the Attorney
General's caption is misleading. The parties agree, as do we,
that the role of the commission that the measure would cre-
ate is to *gather information and develop recommendations* for
legislation, and to submit its recommendations to the Legis-
lative Assembly. The commission itself has no lawmaking
authority. However, the caption, as presently phrased, most
reasonably suggests that the measure's subject matter con-
sists of undisclosed substantive changes regarding each of
the four listed areas of the law. In our view, a voter, after
examining the current caption, would be surprised to learn
that the measure would create a commission, which the cap-
tion does not mention, with authority not to modify any law,
but only to recommend legal changes that the Legislative
Assembly might never consider, much less enact.

In *Hunnicutt v. Myers*, 342 Or 491, 155 P3d 870
(2007), this court determined that the Attorney General's

caption did not disclose the full impact of the legal changes that the proposed measure would enact. The court decided that the undisclosed legal consequence was a significant part of the measure and that the failure of the caption to mention it "renders the caption underinclusive and thus inaccurate." *Hunnicutt*, 342 Or at 495. The court required the Attorney General to modify the caption to disclose the omitted effect of the measure. *Id.*

We conclude from the foregoing that the Attorney General's caption does not comply substantially with the requirements in ORS 250.035(2)(a). Accordingly, we will refer the ballot title to the Attorney General for modification of the caption.

■ Petitioner also challenges the Attorney General's "yes" vote result statement for the same reason discussed above regarding the caption. A "yes" vote result statement must describe, in 25 words, "the result if the state measure is approved." ORS 250.035(2)(b).

The caption and the "yes" vote result statement use identical terms to describe the legal modifications that the proposed measure would enact. Thus, for the reasons already discussed, the "yes" vote result statement fails to reasonably identify the result if the measure is approved. Because the "yes" vote result statement does not comply substantially with statutory requirements, it, too, should be modified on referral to the Attorney General.[2]

■ Finally, petitioner challenges the Attorney General's summary on the ground that the proposed measure creates spending mandates without providing any replacement revenue, thus arguably depriving other public services of needed

---

[2] We have addressed the arguments that the petition and the Attorney General's answering memorandum have raised. ORAP 11.30(4)(b) (petition "[s]hall include the reason the ballot title does not substantially comply with the requirements of ORS 250.035 * * *"); ORAP 11.30(7) ("* * * The answering memorandum may set forth concisely the reasons why the Attorney General believes the ballot title filed with the Secretary of State substantially complies with the requirements of ORS 250.035 * * *."). The dissent raises additional arguments supporting the Attorney General's position. We decline to address those additional arguments.

revenue. We conclude that the summary complies substantially with the requirements in ORS 250.035(2)(d). The summary contains a brief description of the tax credit that the measure would enact. The following phrase appears in parentheses after that description: "(thereby reducing state revenues)." In view of the numerous aspects of the proposed measure that the summary must address, we conclude that that parenthetical phrase adequately discloses that major effect of the measure.

Ballot title referred to Attorney General for modification.

**BALMER, J.,** dissenting.

I respectfully dissent. I would certify the Attorney General's ballot title for two reasons. First, in my view, the Attorney General's ballot title for Initiative Petition 133 substantially complies with the statutory requirements for a ballot title. *See* ORS 250.085(5) (stating "substantial compliance" test). Second, this court earlier certified the Attorney General's ballot title for another measure, Initiative Petition 104, that is similar to the measure at issue here. The Attorney General's ballot titles for the two measures also are similar, as are petitioner's grounds for challenging the ballot titles. Neither petitioner nor the majority suggests any basis to distinguish this case from the earlier case, and I am aware of none. It follows that we should certify the ballot title in this case. I turn to a brief discussion of those two grounds that lead me to conclude that the Attorney General's ballot title should be certified.

A ballot title caption must "reasonably identif[y]" the proposed measure's "subject matter." ORS 250.035(2)(a). The certified caption reads:

"MODIFIES LAWS RELATING TO LAW ENFORCEMENT, CRIMINAL SANCTIONS, PROSECUTIONS, CONTROLLED SUBSTANCES INVESTIGATIONS; CREATES TAX CREDIT"

Neither petitioner nor the majority identifies anything that is inaccurate in the certified caption. Rather, petitioner argues that the caption "fails to adequately capture all

of the disparate aspects" of the initiative, including the creation of "task forces." The majority agrees in part, asserting that the phrase "modifies laws relating to" in the caption "is so broad that it fails to disclose the subject matter of the proposed measure in terms that give notice to the voters of the principal substantive choice or choices that the measure presents." 344 Or at 224. In particular, the majority asserts that "[a] principal change" that the proposed measure would enact is the "creation of a commission, including task forces, to recommend legislation in several areas of the criminal law[.]" *Id.* at 224. The majority states that that change can be described within the applicable word limit. The majority also argues, somewhat inconsistently, that the caption will mislead voters by making them think that the measure makes "substantive changes," although changes recommended by the commission and task forces may not be enacted.

In my view, the creation of a new commission and associated task forces with the specific charge to make recommendations to reduce "incidences of domestic violence, child abuse, and sex crimes" is captured by the phrase "modifies laws relating to law enforcement, criminal sanctions, prosecutions * * *." Moreover, the Attorney General's use of somewhat general wording in the certified caption also allows the caption to encompass other changes that would be made by the proposed measure, including an additional sanction for sex offenders, the "Meth Strike Force" initiative, the new requirements regarding force levels for the state police, and the program to encourage retired peace officers to continue active service. The specific aspects of the measure, including the task forces and the changes just mentioned, are then identified in the "yes" vote and "no" vote result statements or in the summary.

I do not share the majority's certainty that the caption could be worded in a way that would specifically refer to the commission and the task forces and still retain words that adequately describe the other changes identified above, while remaining within the word limit. Morever, given the *specific* changes that passage of the proposed measure itself would make in law enforcement, prosecution, and sanctions, it strikes me that the creation of a commission and task forces to make future recommendations to the legislature is

less of a "principal substantive choice" for the voters than the other provisions of the measure. Whether I am correct on that score or not, however, the Attorney General made a permissible choice when he stated in the caption that the measure "modifies laws relating to law enforcement, criminal sanctions, prosecutions," and then expanded on those modifications in the other parts of the ballot title. The Attorney General often faces the problem of identifying the subject of a proposed measure that makes multiple changes in the law, and we have endorsed the approach that he took here:

> "This court has explained that the function of a ballot title caption is to identify generally the thread that connects a ballot measure's various provisions, rather than 'focusing on one or more of the most significant constituent parts.' *Rooney v. Kulongoski*, 322 Or 77, 85, 902 P2d 1177 (1995). A caption that does not list multiple parts of an initiative measure nonetheless may comply substantially with the statutory standard, in the absence of a showing that unnecessary words have been inserted into the caption and that additional ideas could be communicated to the voters by replacing those unnecessary words. *Crumpton v. Keisling*, 317 Or 322, 325-26, 855 P2d 1107 (1993)."

*Sizemore v. Myers*, 326 Or 220, 225-26, 953 P2d 360 (1997).

Here, the Attorney General "identif[ied] generally the thread that connects [the] ballot measure's various provisions," and petitioner has not demonstrated that the Attorney General has used unnecessary words in the caption. Even if the caption proposed by petitioner might be a better or more complete description of the subject matter of the measure, that would not provide a basis for rejecting the Attorney General's certified caption. In my view, the certified caption adequately states the "subject matter" of the proposed measure. For the same reasons, the remainder of the ballot title substantially complies with the requirements of ORS 250.035(2).

As noted, this court previously considered challenges by petitioner and by others to Initiative Petition 104. That proposed measure, like this one, would have made changes to criminal sanctions, created Meth Strike Forces, established specific staffing levels for the state police, and allowed tax credits for contributions to crime prevention

efforts. Also, Initiative Petition 104, like Initiative Petition 133, would have established a commission and two associated task forces to make recommendations to the legislature for reducing "domestic violence, child abuse, and sex crimes." Initiative Petition 104 would have made a number of other changes in the criminal law that are not included in Initiative Petition 133, including repealing the Oregon Medical Marijuana Act and enacting a different program to provide prescribed "synthetic cannabinoids" for certain medical patients. Petitioner asserts that, with the exception of the changes in the medical marijuana laws, Initiative Petition 133 and Initiative Petition 104 are "virtually identical." Although that is something of an overstatement, the two measures share many common features.

The Attorney General certified a ballot title for Initiative Petition 104 that was similar to the ballot title that he certified for Initiative Petition 133. The certified caption for Initiative Petition 104 stated:

"MODIFIES LAWS ADDRESSING CRIMINAL PROSECUTIONS/SANCTIONS, LAW ENFORCEMENT; CREATES TAX CREDIT; REPLACES MEDICAL MARIJUANA ACT"

Like the certified caption for Initiative Petition 133, the caption for Initiative Petition 104 identified the subject matter of the measure by using general and inclusive terms to describe the measure (other than the specific references to the tax credit and medical marijuana law revision). Notably, that caption did *not* refer to the commission and the associated task forces that are to make recommendations to the legislature. Rather, as the Attorney General argued in response to challenges to the ballot title for Initiative Petition 104, the commission and the task forces were covered by the general reference to the modification of laws "addressing criminal prosecutions/sanctions, law enforcement * * *." They were then mentioned specifically in the summary.

Petitioner here challenged the certified ballot title for Initiative Petition 104, arguing, among other things, that the caption was deficient because it failed to mention the

commission and the task forces. This court rejected petitioner's challenges (and challenges made by others) and certified the ballot title. *Mannix v. Myers*, 343 Or 367, 170 P3d 1065 (2007). Although this court disposed of the challenge to Initiative Petition 104 by order rather than by opinion and, therefore, principles of *stare decisis* technically may not apply, the earlier certification order was correct and, in my view, is a further reason that the Attorney General's ballot title for Initiative Petition 133 also should be certified.

For the reasons given above, I dissent.

Kistler and Linder, JJ., join in this dissenting opinion.